```
           IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF OKLAHOMA

HUBERT G. SIMPSON,              )
                                )
            Plaintiff,          )
                                )
v.                              )     Case No. CIV-18-007-RAW-KEW
                                )
COMMISSIONER OF SOCIAL          )
SECURITY ADMINISTRATION,        )
                                )
            Defendant.          )
```

**REPORT AND RECOMMENDATION**

Plaintiff Hubert G. Simpson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 53 years old at the time of the ALJ's decision. Claimant obtained his GED. Claimant worked in the past as a truck driver, plumber's helper, and maintenance machine worker. Claimant alleges an inability to work beginning November 1, 2014 due to limitations resulting from type II diabetes and obesity.

### Procedural History

On November 6, 2014, Claimant protectively filed for

disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On December 12, 2016, Administrative Law Judge ("ALJ") Lantz McClain conducted an administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. On February 1, 2017, the ALJ issued an unfavorable decision. On December 18, 2017, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform light work with limitations.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) evaluating Claimant's credibility on his alleged pain; (2) failing to include all of Claimant's limitations in the RFC; and (3) improperly weighing the opinions of Claimant's treating sources.

### Credibility Determination on Pain

4

In his decision, the ALJ determined Claimant suffered from the severe impairments of insulin dependent diabetes mellitus, status post injury to the third finger on the left hand, and obesity. (Tr. 20). The ALJ concluded that Claimant retained the RFC to perform light work. In so doing, the ALJ found Claimant could occasionally lift/carry 20 pounds, frequently lift/carry up to ten pounds, stand and/or walk at least six hours in an eight hour workday, and sit for at least six hours in an eight hour workday. Claimant was limited to no more than occasional use of the left hand for handling or fingering, noting that Claimant is right hand dominant. (Tr. 22).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of bakery worker and rental clerk, both of which were found to exist in sufficient numbers in the national and regional economies. (Tr. 28). As a result, the ALJ found Claimant was not under a disability from October 28, 2014 through the date of the decision. (Tr. 29).

Claimant contends the ALJ improperly assessed his credibility as to the pain he experienced. He testified at the administrative hearing that he quit working because his feet and diabetes made it to where he could not stand. Claimant had to prop his feet up and take his shoes off because his feet "just kill me all the time." (Tr. 38). He worked maintenance at OK Foods. In that capacity, he had to run and keep the lines going, killing chickens and replacing

motors and line belts. Claimant testified he was on his feet all the time. He held the job for nine years. He began having to sit because of his feet and others would have to his job. He found it hard to stand for more than 15 or 20 minutes at a time. His neuropathy in his feet has been bothering him for two or three years. (Tr. 39).

Claimant sought medical treatment for his feet, primarily from Melinda Scantling (who is an ARNP). He had health insurance through Blue Cross and Blue Shield. (Tr. 40). He stopped seeing Ms. Scantling because he could not afford to pay her as she did not take insurance. He switched to doctors in Muskogee, Sallisaw, and Poteau, Oklahoma. (Tr. 41). He returned to Ms. Scantling when she started taking insurance. Claimant testified that he had diabetes for 26 or 27 years while working full time. However, he testified his diabetes did not prevent him from working, only the neuropathy in his feet. (Tr. 42). He stated that his feet feel like they are on fire or feels like the bottom of them blows off. Claimant tried medication to address the problem which helped a little bit. The medication does not take the pain away. Beyond the medication, sitting up and propping his feet up with no shoes or socks helps the pain. (Tr. 43).

The pain returns when he puts shoes and socks on his feet. He does not wear shoes and socks at home but puts them on to leave the

house. He goes to the store, grocery shopping or to the doctor's office. (Tr. 44). Before the onset of the neuropathy, Claimant testified he liked to fish and hunt and "just piddle around." He liked to walk in the mountains. He was not able to do these activities any more because of foot pain. Claimant travels to the store and grocery shops at Wal-Mart for a couple of hours once or twice per month. Sometimes he goes into the store but has to sit in the shoe department for relief of the pain in his feet. Claimant also could walk outside and sit on the front porch for a little while or walk around the yard for a couple of minutes and go back inside and prop up his feet. When he experienced a bad day, he sat in his recliner or goes to bed. (Tr. 46).

Claimant had difficulty sleeping due to foot pain. He usually sleeps for an hour our hour and a half then is up for two to three hours. He has received no other treatment from his primary physician for this condition. Sometimes he washes dishes or vaccums but not very often. (Tr. 47). On bad days, Claimant does not shower or change clothes - he remains in his recliner. Claimant testified that he has trouble completing things he starts due to foot pain before he had to return to sit down and prop up his feet. (Tr. 48). The pain in his feet is constant. He estimated that he would be able to work if not for his foot pain. (Tr. 49).

The ALJ effectively recited the primary testimony from Claimant

in the decision. He concluded, however, that he "considered the claimant's statements and [gave] them some weight because they appear to be open and honest; however, they are not entirely consistent with the totality of evidence in this case." (Tr. 23). The ALJ found that "the objective medical evidence and other evidence of record shows that claimant's diabetes mellitus and hand pain are both well controlled with medication. Although the claimant does experience foot pain, evidence does not indicate the pain is so severe that it would prevent the claimant from performing work activity." (Tr. 24).

The ALJ acknowledge the medical source statements provided by Ms. Scantling and Angella Tolleson, ARPN/CNP. Both medical sources indicated Claimant could sit for one hour during an eight hour workday, stand for less than one hour, and walk for less than one hour in an eight hour workday. Claimant could engage in a combined walking and standing for two hours. (Tr. 515, 600). These professionals limited Claimant to occasional lifting/carrying up to ten pounds. They also found Claimant could not squat, crawl, climb, crouch, or kneel. He also could not be exposed to unprotected heights, marked temperature changes, or exposure to dust or fumes. (Tr. 516, 601). They both estimated Claimant would have to take breaks, experience good days and bad days, and be required to be absent more than four days per month. He also needed to elevate his

feet periodically during the day. (Tr. 517, 602). The ALJ rejected giving these statements controlling weight because Ms. Tolleson and Ms. Scantling are not acceptable medical sources. He also found an inconsistency in their statements with Claimant's testimony in restricting him to one hour of sitting when he testified to being able to sit for a longer period of time. (Tr. 26).

Instead, the ALJ gave the opinion of the state agency medical consultant, Dr. David M. Bailey "great weight" as being consistent with the medical treatment record. (Tr. 27). The non-examining consultant found Claimant could stand/walk and sit for six hours out of an eight hour workday. The primary limitation found by Dr. Bailey related to Claimant's infection in his left third finger which limited its use. (Tr. 74).

Claimant was also examined for neuropathy by Dr. Randall Matos on May 6, 2015. Dr. Matos noted Claimant's complaints of pain in the feet which he characterized as "moderate severity, burning, and stabbing" as well as numbness. (Tr. 485). Upon examination, Dr. Matos found normal skin, soft tissue and bony appearance with longitudinal arch, no gross edema or evidence of acute injury. Normal palpation was noted with sensory deficit in the saphenous, peroneal, and sural nerve distribution. Normal peripheral vascular exam. Normal muscle strength and range of motion was also indicated. He diagnosed Claimant with polyneuropathy in diabetes

as well as neuralgia, neuritis, and radiculitis, unspecified. (Tr. 487).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature of Claimant's treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's credibility. No acceptable medical source found the level of restriction to which Claimant testified.

## RFC Evaluation

Claimant contends the ALJ should have included the limitations listed by Ms. Tolleson and Ms. Scantling in the RFC and inquired of the vocational expert as to the effect upon the available jobs. As the ALJ indicated, the opinions of these sources are not entitled to controlling weight. Moreover, nurse practitioners, such as Ms. Tolleson and Ms. Scantling, are not acceptable medical sources but rather are characterized under the regulations as an "other source". This conclusion is consistent with the applicable regulations. *See* 20 C.F.R. §§ 404.1502, 404.1513(a). "Other source" information, however, is useful for other purposes. "Information from [ ] 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be

11

based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Soc. Sec. R. 06-03p.

Claimant is essentially urging this Court to determine his neuropathy as a severe impairment without an affirming medical opinion from an acceptable medical source. Since no acceptable medical source has found the condition to be severe, the level of limitation to which Ms. Tolleson and Ms. Scantling attest has little bearing upon Claimant's RFC.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record

were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's declining to give Ms. Tolleson's and Ms. Scantling's opinions weight as not an acceptable medical source was supported by the remainder of the medical record.

### Opinion Evidence

In a bit of a reiteration of the issue, Claimant asserts that Ms. Tolleson's and Ms. Scantling's opinions were improperly evaluated. As stated herein, the ALJ's evaluation was appropriate.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 5th day of March, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE